JACK CARR STUBBLEFIELD, DECEASED EMPLOYEE, MR. AND MRS. HARVEY STUBBLEFIELD, PARENTS, PLAINTIFFS v. WATSON ELECTRICAL CONSTRUCTION COMPANY, EMPLOYER, AND TRAVELERS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7010IC355

(Filed 15 July 1970)

Master and Servant §§ 56, 60— workmen's compensation — minimal departure from assigned duties

The accident which resulted in deceased employee's death arose out of and in the course of his employment with defendant electrical contractor where deceased was doing electrical work with his foreman in the brick plant of a third party and, while waiting for his foreman to descend a ladder, began knocking dust and pieces of brick from the rollers under a conveyor belt, deceased's hand became caught in the rollers, and deceased was pulled between the rollers and the conveyor belt, causing his death, since the impulsive act of deceased in knocking dust from the roller while waiting for his foreman to descend the ladder did not constitute such a departure from his employment as to remove him from the protection of the Workmen's Compensation Act.

CAMPBELL, J., dissents.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission dated 18 February 1970.

This is an appeal from an opinion and award of the North Carolina Industrial Commission filed 18 February 1970 which adopted as its own the findings of fact, conclusions of law, and award theretofore filed in the case on 13 November 1969 by Deputy Commissioner W. C. Delbridge. For purposes of this appeal the pertinent findings of fact so adopted were as follows:

"FINDINGS OF FACT

"1. The deceased employee, Jack Carr Stubblefield, was employed with the defendant employer on May 29, 1969, and prior thereto as an apprentice electrician.

"2. On May 29, 1969 the deceased employee was working at the Cherokee Brick plant in Moncure, North Carolina. He had been doing electrical work there for about two months as a helper to Mr. Fesperman, his foreman. On May 29, 1969, the deceased was pulling an electrical wire from one box to another. The foreman was feeding the wire into the conduit while the deceased was pulling. There was about 50 to 60 feet of this wire, the deceased being on one end and the foreman on the other. The foreman was standing on an eight foot ladder at the top. When the deceased had pulled the wire about one-half way it got tight and therefore he called to his foreman and advised him that he could not pull the wire any further. The deceased then proceeded to go to the place where his foreman was working. The deceased passed under a conveyor belt on his way to his foreman. There were rollers or pullies on the conveyor belt. This conveyor was slanted about at a 45 degree angle from the floor up towards the roof. The conveyor was supported at the top end by some steel rods. There were three rollers on the conveyor and it was in operation. When the deceased reached a point about eight feet from the base of the ladder where his foreman was working the foreman was in the process of descending the ladder as the deceased stood near one of the rollers on the conveyor which was about five and one-half feet high from the floor and while so standing waiting for his foreman he used a nine inch pair of pliers to knock some dust and pieces of brick from the rollers. As he knocked the dust and brick from the rollers his hand became entangled in the conveyor

Stubblefield v. Construction Co.

belt or rollers causing him to be pulled between the rollers and the conveyor belt up to his shoulders. The deceased received head and chest injuries from which he died instantly.

"3. When the deceased's foreman saw the deceased being caught in the belt and rollers he grabbed for him but was unable to reach him in time to prevent him from going between the rollers and the belt.

"4. There were several other conveyor belts in the room that the deceased and his foreman were working. There were no safety devices or guard rails around the rollers or conveyor belt.

"5. The deceased was on his way to his foreman when he was caught in the rollers. The parties were going to cut the wire through about one-half way. Deceased was on his way to assist his foreman when he was caught in the rollers. He had stopped at the rollers, and was knocking dust off the same while waiting for his foreman to come down the ladder. Deceased was in a direct route from the place he had been working to where his foreman was working when the episode occurred. He had to pass under the conveyor in order to get to his foreman as it was between where he was working and where his foreman was working.

"6. The deceased and his foreman were doing electrical work with reference to some new machinery which had been installed in the plant. They were not working on the conveyor belt or rollers and had no duties with reference to it.

"7. Deceased was in the plant where he was sent to work by his employer. He was performing duties incident to his employment although those duties did not require him to knock dust off the rollers on the conveyor belt. He was standing waiting for his foreman to get off the ladder, at which time they were going to fix the wire.

"8. The deceased had not been observed to have ever dusted off rollers in the plant before, but employees of the Cherokee Brick Company frequently dusted the rollers on the conveyor belt.

"9. The deceased employee sustained an injury by accident resulting in his death which arose out of and in the

course of his employment with the defendant employer on May 29, 1969."

On these findings of fact the Deputy Commissioner and the full Commission concluded as a matter of law that the deceased employee sustained an injury by accident resulting in his death which arose out of and in the course of his employment with the defendant employer. From an award in accordance with such conclusion, defendants appealed, assigning as error that Finding of Fact Number 9 and the conclusion of law in accord therewith were not supported by Findings of Fact Numbers 1 through 8.

*Bryant, Lipton, Bryant & Battle, by Victor S. Bryant, Jr., for claimant appellees.*

*Gene C. Smith for defendant appellants.*

PARKER, J.

Appellants concede and the record discloses that Findings of Fact 1 through 8 are supported by competent evidence. The sole question presented by this appeal is whether these findings are in turn sufficient to support the finding and conclusion that the accident which resulted in the employee's death arose out of and in the course of his employment with defendant employer. We agree with the Industrial Commission that they were.

The accident occurred at a time when the employee was on duty and at a place where his duties authorized him to be. The hazard to which he was exposed existed at that time and place. It must be reasonably anticipated that employees are subject to the ordinary human frailties shared by the rest of mankind. Among these is the tendency on occasion to act upon a sudden impulse, whether induced by curiosity or by some other factor. Where, as here, the resulting act involves only a minimal departure from the employee's assigned duties, the Workmen's Compensation Act, when liberally construed to effectuate its purpose, should still provide coverage.

In the present case, the impulsive act of the employee in knocking dust from the roller while waiting for his foreman to descend the ladder, did not, in our opinion, constitute such a departure from his employment as to remove him from the protection of the Act. We agree with the Industrial Commission that the time, place, and circumstances of the accident here involved were such as to support a finding and conclusion that

it arose out of and in the course of the employee's employment with his employer. The opinion and award of the Industrial Commission is

Affirmed.

VAUGHN, J., concurs.

CAMPBELL, J., dissents.